| | | |
|---|---|---|
| CANDICE W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV226 |
| | ) | |
| FRANK J. BISIGNANO, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

**MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Candice W., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute as Defendant in this suit. Neither the Court nor the parties need take further action to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(Plaintiff's Brief); Docket Entry 12 (Commissioner's Brief)).  For the reasons that follow, the Court will remand this matter for further administrative proceedings.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 566-77), alleging a disability onset date of August 18, 2020 (see Tr. 566, 569, 571). Upon denial of those applications initially (Tr. 406-29, 461-72) and on reconsideration (Tr. 430-53, 475-90), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 493-94).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 386-405.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 364-85.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 563-65), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1.   [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2025.
>
> 2.   [Plaintiff] has not engaged in substantial gainful activity since August 18, 2020, the alleged onset date.

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 9 at 1.)

3.    [Plaintiff] has the following severe impairments: disorder of the skeletal spine; arthropathy; and obesity.

. . .

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.    . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . . except she is able to lift and carry up to 10 pounds occasionally and 5 pounds frequently; sit for 6 hours in an 8-hour day; stand and walk for 2 hours in an 8-hour day; push and pull as much as she can lift and carry; no climbing ladders, ropes, or scaffolds; frequent climbing ramps or stairs, balancing, stooping, kneeling, or crouching; no crawling; occasional overhead reaching with the right upper extremity; frequent reaching in other directions with the right upper extremity; frequent handling and fingering with the right upper extremity; frequent reaching, handling, and fingering with the left upper extremity.

. . .

6.    [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from August 18, 2020, through the date of th[e ALJ's] decision.

(Tr. 369-81 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court will remand this case for further administrative proceedings.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting

4

Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

5

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled.  <u>Id.</u> at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[6]

### B.  Assignment of Error

Plaintiff's first and only assignment of error maintains that "[t]he ALJ erred by failing to perform a function-by-function evaluation of [Plaintiff]'s ability to sit when formulating the RFC."  (Docket Entry 11 at 5 (bold font and block formatting omitted).)  In particular, Plaintiff notes that "the ALJ found that [Plaintiff] would be expected to sit for a full 6 hours out of an 8-hour workday" (<u>id.</u> at 8 (citing Tr. 373)), and Plaintiff

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

highlights her own statements (see id. at 5-6 (citing Tr. 391, 393-94, 398-99, 597-98, 605, 638)), as well as medical evidence (see id. at 6-8 (citing Tr. 721, 733-34, 761, 765, 777, 791, 796, 968, 932-33, 943, 972, 980, 1000, 1035, 1039, 1050, 1072, 1078-79, 1080, 1084, 1089, 1093, 1095, 1098-99, 1104, 1217, 1730, 2235)), that she believes support greater limitations in the RFC on her ability to sit.  In Plaintiff's view, although "[t]he ALJ briefly summarized [Plaintiff]'s testimony" (id. at 8 (citing Tr. 374)) and "some of the medical evidence in the record" (id. (citing Tr. 375-78)), "the ALJ d[id] not explain how the evidence he cite[d] demonstrate[d] that [Plaintiff] c[ould] perform [six hours] of sitting total in the workday or for how long [she] c[ould] maintain a seated position at one time" (id. at 8) in violation of Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018), Monroe v. Colvin, 826 F.3d 176, 189-90 (4th Cir. 2016), and Mascio v. Colvin, 780 F.3d 639-40 (4th Cir. 2015) (see id. at 8-9).  Plaintiff further deems the ALJ's failure to "make any findings regarding how long [Plaintiff] is capable of sitting *at one time* . . . significant because, with a sedentary RFC, [she] would be expected to maintain a seated position for about three quarters of the workday."  (Id. at 9 (emphasis in original) (citing Holland v. Commissioner of Soc. Sec. Admin., Civ. No. 17-1874, 2018 WL 1970745, at *10 (D. Md. Apr. 25, 2018) (unpublished), for proposition that "ALJ needs to explain

how the determination in frequency of change of position was arrived upon").)

Plaintiff additionally contends that, "'[h]aving met [her] threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [she wa]s entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that [her] pain [wa]s so continuous and/or so severe as to prevent [her] from working a full eight hour day.'" (Id. at 10 (quoting Hines, 453 F.3d at 565); see also id. at 11 (quoting Oakes v. Kijakazi, 70 F.4th 207, 215 (4th Cir. 2023), for proposition that case should result in remand where "ALJ 'never addressed the fact that disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain'").) Plaintiff further emphasizes that "[t]he [United States Court of Appeals for the] Fourth Circuit recently addressed a similar issue . . . [and] determin[ed] that the ALJ should have specifically addressed the claimant's testimony regarding how long [s]he was capable of sitting and, further, that ALJs have to perform a function-by-function analysis of *contested* and *relevant* functions." (Id. at 10 (emphasis in original) (citing Dowling v. Commissioner of Soc. Sec., 986 F.3d 377, 388-89 (4th Cir. 2021)).) Plaintiff ultimately contends that "this case must be remanded for an evaluation and discussion of [Plaintiff]'s ability to sit[,]" and that "vocational evidence should be

developed concerning the impact of a 'sit/stand option' on the sedentary occupational base." (Id. at 11.) For the reasons that follow, Plaintiff has demonstrated that the ALJ failed to support his RFC finding regarding Plaintiff's ability to sit with substantial evidence, warranting remand.

RFC measures "the most a claimant can do despite" any physical and mental limitations, Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a), and represents a claimant's "'ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis,'" i.e., "'8 hours a day, for 5 days a week, or an equivalent work schedule,'" Hines, 453 F.3d at 562 (emphasis omitted) (quoting Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 98-6p")). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See id. at 562–63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy), see 20 C.F.R. §§ 404.1567, 916.967, and any non-exertional limitations may further restrict the claimant's ability to perform jobs within an exertional level, see 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

11

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods, 888 F.3d at 694 (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[ and,] . . . [o]nly after that[,] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio, 780 F.3d at 636–37. Specifically, the court stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636 (internal quotation marks omitted), but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite

12

contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, the ALJ did not expressly assess Plaintiff's ability to sit on a function-by-function basis (see Tr. 373-78), and the ALJ's decision fails to provide the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and his findings that Plaintiff's disorder of the skeletal spine, arthropathy, and obesity (A) qualified as severe impairments at step two of the SEP (see Tr. 369), but (B) did not cause limitations greater than the RFC's allowance of up to six hours of sitting (in no more than two hour intervals generally) in an eight-hour workday (see Tr. 373).[7]

As an initial matter, to the extent Plaintiff intends her contention that she could "'rely exclusively on subjective evidence to prove . . . that [her] pain [wa]s so continuous and/or so severe

―――――――――――――

[7] Plaintiff's assertion that the ALJ failed to "make any findings regarding how long [Plaintiff] is capable of sitting **at one time**" (Docket Entry 11 at 7 (emphasis in original)) falls short. Here, although the ALJ found Plaintiff could sit for a total amount of "6 hours in an 8-hour day" (Tr. 373), and did not make any express finding how long Plaintiff could sit at one time (see id.), the Commissioner's policy ruling makes clear that, for sedentary work, sitting would occur in no more than two-hour increments generally with standard breaks, see Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work-Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185, at *6 (July 2, 1996) ("SSR 96-9p") ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." (emphasis added)).

as to prevent [her] from working a full eight hour day'" (Docket Entry 11 at 10 (quoting Hines, 453 F.3d at 565)) to mean that the ALJ erred by considering objective medical evidence at all in analyzing the intensity, persistence, and limiting effects of Plaintiff's symptoms, such an argument misses the mark. Although the Fourth Circuit has "reiterate[d ] long-standing [Circuit] law . . . that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," Arakas v. Commissioner of Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020), long-standing cases containing the substance of that holding, such as Craig and Hines (among others), clarify that, "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers," Craig, 76 F.3d at 595 (emphasis added); see also Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595).

In other words, under the appropriate circumstances, an ALJ may choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, Oakes, Arakas, Craig,

14

and Hines do not compel ALJs to consider only subjective evidence, as such a requirement would conflict with both the Act and its implementing regulations, which plainly require ALJs to consider a variety of factors, including objective medical evidence, in evaluating the intensity, persistence, and limiting effects of symptoms.  See 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether [an] individual is under a disability." (emphasis added)); see also 20 C.F.R. §§ 404.1529(c), 416.929(c) (directing ALJs to consider a claimant's medical history, medical signs and laboratory findings, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions, in assessing intensity of a claimant's symptoms).  Here, in compliance with Oakes, Arakas, Hines, Craig, and the applicable regulations, the ALJ considered the objective medical evidence as one part of his evaluation of the intensity, persistence, and limiting effects of Plaintiff's alleged pain, as the ALJ also considered Plaintiff's daily activities (see Tr. 374), medication and other treatment used to alleviate pain (see Tr. 374-78), and the opinion evidence of record (see Tr. 379).

Although the ALJ did not err in considering objective medical evidence as one part of his analysis of Plaintiff's subjective

15

symptom reports, that evaluation nevertheless does not explain the ALJ's RFC finding that Plaintiff remained able to sit for a total of six hours (in two-hour increments generally) in an eight-hour workday (see Tr. 373). The ALJ explicitly acknowledged that "[Plaintiff] testified that she continue[d] to have lower back pain and trouble sitting" (Tr. 374 (emphasis added) (referencing Tr. 392)), "estimate[d] that she c[ould] . . . sit for 30 minutes" (id. (emphasis added) (referencing Tr. 393)), stated that "[s]he would be unable to sit for 6 hours a day because she would need to change positions" (id. (emphasis added) (referencing Tr. 394)), and asserted that "[s]itting . . . too long cause[d] the pain to go down her leg" and that "[she] change[d] position constantly during the day" (id. (emphasis added) (referencing Tr. 398-99)). Although the ALJ thereafter found that "[Plaintiff]'s statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (Tr. 374-75 (emphasis added)), the remainder of the ALJ's decision fails to explain why the ALJ rejected Plaintiff's statements regarding her limitations in sitting, i.e., that she could not sit longer than 30 minutes at a time and needed to change positions frequently (see Tr. 393-94, 398-99).

The ALJ addressed sitting only one time in the narrative discussion of the RFC in the generalized statement that "[t]he

16

sitting, standing, walking, climbing, balancing, stooping, kneeling, crouching, and crawling limitations [we]re assessed primarily due to [Plaintiff]'s residual lumbar symptoms and arthropathy in consideration of the exacerbating effects of obesity." (Tr. 379 (emphasis added).) That statement makes no sense, as the ALJ did not include "sitting . . . limitations" in the RFC (id. (emphasis added)). As discussed above, sedentary work requires a worker to sit for up to a total of six hours in an eight-hour workday, with occasional standing and walking and standard breaks at two-hour intervals making up the remaining two hours. See 20 C.F.R. §§ 404.1567(a), 416.967(a); see also SSR 96-9p, 1996 WL 374185, at *3, *6. Work at higher exertional levels (i.e., light, medium, heavy, and very heavy) generally requires less sitting and more lifting, carrying, standing, and walking, see 20 C.F.R. §§ 404.1567(b) – (e), 416.967(b) – (e). Thus, by finding Plaintiff could sit for a total of six hours in an eight-hour workday and not including any limitation on the amount of time Plaintiff could sit at one time beyond the implicitly found default of two-hour increments due to standard breaks (see Tr. 373), the ALJ found Plaintiff could perform the maximum amount of sitting involved in unskilled work and did not place any "limitation[]" on her ability to sit (Tr. 379).

Moreover, the ALJ discussed Plaintiff's daily activities only in the context of summarizing her testimony (see Tr. 374), and that

17

testimony described very limited ability to engage in daily activities:

> [Plaintiff] stated that she is dropping items and does not drive. . . . [Plaintiff] lives with her mother and daughter. On a typical day, [Plaintiff] tries to shower. She needs help doing her hair. [She] tries to wash dishes. She lies down during the day for 1 to 2 hours. . . . She has difficulty using her hands to open jars, eat, and write. . . . [Plaintiff] changes position constantly during the day. She shops for groceries with help reaching, pushing the cart, and putting groceries on the conveyor belt. [She] does not use the electric cart. Some days, her pain is overwhelming. [She] has difficulty washing her hair and reaching overhead to put on undergarments. She wears pull-on clothes.

(Id.) Significantly, the ALJ neither expressly discounted Plaintiff's subjective statements regarding her daily activities nor made any attempt to rely on her ability to engage in daily activities as supportive of her ability to sit for a total of six hours and for two hours at a time generally. (See Tr. 374-78.) Thus, the ALJ's consideration of Plaintiff's daily activities does not support or explain the ALJ's omission of greater sitting limitations from the RFC.

With regard to the ALJ's discussion of the objective medical evidence, the Commissioner notes that the ALJ relied upon normal strength of the lower extremities and negative straight leg raise testing in February 2021 as supportive of the RFC's finding with regard to sitting. (See Docket Entry 12 at 10 (citing Tr. 376 ("Regarding [Plaintiff's] low back, the full strength and negative straight leg raise testing through at least February 2021 support

18

the determination that [she] maintained the ability to perform work activities consistent with the [RFC].”), 764-65 (containing orthopedic surgeon’s findings of normal strength and negative straight leg raise test on February 26, 2021).) However, the ALJ failed to 1) explain how normal leg strength and a one-time negative straight leg raise test undermined Plaintiff’s assertions of difficulty sitting due to lower back pain, 2) explicate why findings of moderate tenderness in her lumbar spine and decreased lumbar flexion, extension, and rotation at that same examination in February 2021 (see Tr. 765) did not support her assertions of inability to sit longer than 30 minutes due to back pain, and 3) acknowledge that she had a positive straight leg raise test on the left on January 27, 2021 (see Tr. 1075), as well as another positive straight leg raise test on the left, an antalgic gait, and “dramatically limited” range of motion in her lumbar spine on January 25, 2021 (Tr. 1078-79).

The Commissioner further points out that the ALJ “found it reasonable to infer that Plaintiff would have been unable to work while she recovered from her lumbar spine surgery,” but that, “four months post-surgery, Plaintiff was ‘doing quite well.’” (Docket Entry 12 at 10 (quoting Tr. 376 (“At a December 2021 follow up after [anterior lumbar interbody fusion], [Plaintiff’s orthopedic surgeon] noted that [Plaintiff] was doing quite well and much better than she was at her previous visit. . . . While it is

19

reasonable to infer that [Plaintiff] would have been unable to work while she recovered from her lumbar spine surgery, the record shows that she was doing well by December 2021, only 4 months after the surgery."), and citing Tr. 967 (documenting orthopedic surgeon's remark that "[Plaintiff wa]s doing quite well and she [wa]s much better today than she was at her previous visit")).) Again, however, the ALJ did not acknowledge that 1) at that December 2021 appointment with her orthopedic surgeon, although Plaintiff's back pain showed "significant improvement since the last visit," she reported pain in her right lateral iliac crest radiating into her right groin consistent with a hip etiology (Tr. 964), 2) eight days earlier at a physical therapy appointment, Plaintiff explained that her left lower back and buttock pain had resolved after surgery, but that she still experienced leg pain and right lower back pain into her buttocks and groin which sitting in a car too long aggravated (see Tr. 968), and Plaintiff had significantly reduced range of motion in her lumbar spine (see Tr. 970), and a positive, bilateral straight leg raise test (see Tr. 971), and 3) at a February 2022 appointment with pain management, Plaintiff stated that, although surgery had relieved her burning back pain, she now experienced right lower back, hip, buttock, and groin pain rated at 8/10 and made worse by sitting (see Tr. 943). The ALJ thus improperly cherry-picked "normal" findings while ignoring probative, contemporaneous evidence undermining his finding that

20

Plaintiff could sit for a total of six hours (in two-hour increments generally).  See Arakas, 983 F.3d at 98 ("In evaluating a disability claim, '[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.'" (quoting Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (in turn, quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)))).

The ALJ's evaluation of the opinion evidence also fails to explain the ALJ's omission of greater sitting limitations from the RFC.  In particular, the ALJ found "unpersuasive" (Tr. 379) the opinions of the state agency medical consultants that Plaintiff remained capable of light work involving sitting for up to six hours in an eight-hour day (see Tr. 413, 424, 437, 448), because "[t]he objective medical evidence d[id] not support the medical opinions," and "evidence from other medical or nonmedical sources [wa]s inconsistent with the medical opinions," including "[orthopedic surgeon] Dr. [Beck Deal] McAllister's findings that [Plaintiff] continue[d] to have ongoing symptoms after maximal surgical intervention, which support[ed] the finding that she [wa]s generally more limited than the medical consultants opined" (Tr. 379 (emphasis added)).  Although the ALJ found that Plaintiff was "generally more limited" than the state agency medical consultants found (id.), the ALJ inexplicably found, like the consultants had

21

(see Tr. 413, 424, 437, 448), that Plaintiff could sit for up to six hours in an eight-hour workday (see Tr. 373).

Lastly, as Plaintiff argues (see Docket Entry 11 at 10), Dowling supports remand under the circumstances of this case. In Dowling, the claimant "argued throughout her administrative and judicial proceedings that her [irritable bowel disease] and anal fissure cause[d] her to experience discomfort when she s[at] for a prolonged period of time[, b]ut the ALJ apparently concluded that [the claimant] was not restricted in her ability to sit, as [the ALJ] did not indicate that [the claimant's] RFC was limited because of those problems." Dowling, 986 F.3d at 388. The Fourth Circuit observed that "[t]he ALJ never specifically discussed the extent to which [the claimant]'s alleged sitting problems impacted her ability to perform sedentary work[,] . . . barely mentioned [the claimant]'s sitting problems in [the ALJ's] decision, and discussed them only when rattling off a laundry list of [the claimant's] many impairments and functional restrictions[,]" which "[wa]s a far cry from the 'function-by-function analysis' the ALJ was required to conduct." Id. Rejecting the harmlessness of that error, the Fourth Circuit reasoned as follows:

> In [Mascio], [the court] w[as] concerned that a per se rule [requiring remand when the ALJ does not perform an explicit function-by-function analysis] would require ALJs to "discuss functions that [were] irrelevant or uncontested." [Mascio, 780 F.3d at 636] (internal quotation marks omitted). This case does not raise such concerns. The parties disagree over the extent that [the

22

claimant]'s medical conditions restricted her ability to sit, which makes that function "contested." Moreover, assessing [the claimant]'s ability to sit is critically relevant to determining her disability status, as she likely would have been deemed incapable of performing sedentary work if the ALJ had found that, in addition to not being able to lift, carry, stand, stoop, balance, and climb stairs or ramps, she was not able to sit for a prolonged period of time.

Id. at 388-89.

Here, like the claimant in Dowling, Plaintiff has reported "throughout her administrative and judicial proceedings that her [spinal disorders and arthropathy] cause[d] her to experience discomfort when she s[at] for a prolonged period of time," id. (See Tr. 391 (Plaintiff's counsel statement in opening remarks that Plaintiff's impairments limited her to sedentary work with frequent changes in position), 392 (Plaintiff's testimony that she had a lot of trouble sitting), 393 (her testimony that she could sit for only 30 minutes at a time), 394 (her testimony that she could not do seated job because she would have to keep changing positions frequently), 398-99 (her testimony that she changed positions constantly throughout the day), 564 (her counsel's argument to Appeals Council that ALJ erred by failing to include sit/stand option in RFC), 605 (Plaintiff's Function Report statement that she could not sit for more than 45 to 60 minutes due to hip and back pain), 609 (her Function Report statement that she could read, listen to music, and watch television well if she did not sit in same position too long), 621 (her Disability Report - Appeal

23

statement indicating that she could not sit for long periods of time), 943 (her remark to pain management that sitting made pain worse), 968 & 972 (Plaintiff's statement to physical therapist that sitting in car too long aggravated her pain and that pain prevented sitting longer than one hour), 1084 (Plaintiff's remark to pain management that pain increased with sitting), 1093 (Plaintiff's statement to physical therapist that pain prevented sitting more than 30 minutes), 1099 (Plaintiff's remark to pain management that sitting made pain worse).)  Furthermore, like the ALJ in Dowling, the ALJ here "barely mentioned [Plaintiff]'s sitting problems in [the ALJ's] decision, and discussed them only when rattling off a laundry list of [Plaintiff's] many impairments and functional restrictions[,]" Dowling, 986 F.3d at 388.  (See Tr. 373-79.)

Finally, as in Dowling, the ALJ's error here does not qualify as harmless, as Plaintiff's ability to sit qualifies as both "contested" and highly "relevant," id. at 389 (internal quotation marks omitted), given that the ALJ limited Plaintiff to sedentary work involving up to six hours total of sitting (see Tr 373). Indeed, a finding that Plaintiff's impairments required a sit/stand option could significantly erode the sedentary occupational base, see SSR 96-9p, 1996 WL 374185, at *7 ("An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically.  Where this need cannot be accommodated by scheduled breaks and a lunch period, the

24

occupational base for a full range of unskilled sedentary work will be eroded.  The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand.  The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.  It may be especially useful in these situations to consult a [VE] in order to determine whether the individual is able to make an adjustment to other work."), and, thus, upon remand, the ALJ must not only properly evaluate Plaintiff's ability to sit, but must call upon a VE to opine as to the effect of any sitting limitation(s) on the sedentary occupational base.

In sum, Plaintiff's first and only issue on review demonstrates reversible error by the ALJ.

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **VACATED,** and that this action is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, to include re-evaluation of Plaintiff's ability to sit in accordance with <u>Mascio</u> and <u>Dowling</u> and testimony

25

from a VE as to the impact of any sitting limitation(s) on the sedentary occupational base.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 27, 2026